UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Maurice D. Smith,   Case No. 3:16-cr-348

        Petitioner–Defendant,

v.   MEMORANDUM OPINION
   AND ORDER

United States of America,

        Respondent–Plaintiff.

## I.    INTRODUCTION

Petitioner Maurice D. Smith has filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 34), as well as a supplement to his motion to vacate. (Doc. No. 43). Smith also has filed a variety of other motions, seeking the appointment of counsel, and asserting other grounds to reduce his sentence. (Doc. No. 49, 52, 53, 55, 56, and 57). The government opposes Smith's motions. (Doc. No. 37, 47, and 50). For the reasons stated below, I deny each of Smith's motions.

## II.    BACKGROUND

In November 2016, Smith was indicted on three counts of possessing a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The government subsequently obtained a superseding indictment, which added four counts charging him with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841. (Doc. No. 15). Smith then pled guilty to all seven counts charged in the superseding indictment. Smith faced a

statutory maximum sentence of 10 years on each of the 3 firearms counts and a statutory maximum sentence of 20 years on each of the 4 drug distribution counts.

Smith's total offense level was calculated at 33, with a criminal history category of VI. (Doc. No. 30 at 24). These calculations placed his Guidelines sentencing range at 235 to 293 months. Through counsel, Smith argued the Guidelines range, though correctly calculated, was excessive and did not serve the sentencing goals set forth in 18 U.S.C. § 3553(a). (Doc. No. 29). Defense counsel sought a downward variance to a sentence of less than 120 months.

After considering the arguments of counsel, I sentenced Smith to a total of 86 months in prison and a supervised release term of 3 years. (Doc. No. 32). Smith did not appeal. He subsequently filed a timely motion to vacate his sentence.

### III.    ANALYSIS

#### A.    *REHAIF V. UNITED STATES*

Smith has filed three requests for the appointment of counsel. Smith asserts he requires an attorney to help him present arguments, based upon *Rehaif v. United States*, 139 S.Ct. 2191 (2019), that his conviction and sentence should be vacated because he did not know he was not permitted to possess a firearm. (Doc. No. 48 at 4; Doc. No. 52 at 1; Doc. No. 57 at 1). He also seeks to amend his § 2255 motion to assert his conviction is invalid because the indictment did not allege Smith knew he was a member of a category of individuals prohibited from possessing a firearm. (Doc. No. 56 at 3).

The constitutional guarantee of counsel applies only to criminal proceedings; it does not extend to civil cases. In civil cases, the appointment of counsel is "a privilege justified only be exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (citations omitted); *see also Sellers v. United States*, 316 F. Supp. 2d 516, 522 (E.D. Mich. 2004) (denying petitioner's motion for appointment of counsel where petitioner's filings in support of § 2255 motion showed petitioner

was able to present his case, the claims presented were not overly complex, and the claims lacked merit).

Smith fails to establish he is unable to present his case without an appointed attorney. Without counsel, Smith has filed a § 2255 motion, a supplemental brief in support of his § 2255 motion, motions for the reduction of his sentence under the Second Chance Act and the First Step Act, a brief in reply to the government's opposition to his § 2255 motion, a motion for the disclosure of discovery, another motion to supplement his § 2255 motion, a motion for compassionate release under the First Step Act, and a supplement to his motion for compassionate release. (Doc. No. 34, 43, 49, 51, 53, 55, 56, 58, and 59). Smith also composed a petition to the President of the United States seeking to have his sentence commuted to time served. (Doc. No. 34-1). Smith's claim that he needs an attorney to fully present his arguments pursuant to *Rehaif* is not persuasive.

Further, Smith fails to show the arguments he desires to make have merit. First, the Sixth Circuit has rejected the argument that *Rehaif* "applies retroactively to cases on collateral review." *Cooper v. United States*, No. 19-3645, 2019 WL 7494402, at *2 (6th Cir. Dec. 12, 2019); *see also Khamisi-El v. United States*, 800 F. App'x 344, 349 (6th Cir. 2020) ("The rule stated in *Rehaif* is a matter of statutory interpretation, not a 'new rule of constitutional law.'" (quoting *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019))).

Next, the superseding indictment alleged Smith previously had been convicted of a felony (robbery) and that he knowingly possessed a firearm. (Doc. No. 15 at 1-3). Smith's repeated claims that he did not know the combination of those two facts constitutes a violation of federal law do not undermine the validity of his conviction. (*See, e.g.,* Doc. No. 48-2 at 1; Doc. No. 52 at 1). "*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code." *United States v. Bowens*,

3

938 F.3d 790, 797 (6th Cir. 2019), *cert. denied sub nom. Hope v. United States*, 140 S. Ct. 814, 205 L. Ed. 2d 499 (2020), and *cert. denied,* 206 L. Ed. 2d 500 (Mar. 30, 2020).

Moreover, Smith pled guilty to the charges as stated in the superseding indictment, which provides sufficient proof to establish, beyond a reasonable doubt, that Smith knew he had been convicted of a felony and knowingly possessed a firearm. *United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.").

I deny Smith's requests for the appointment of counsel and his motion to supplement his § 2255 motion.

### B.    DISCLOSURE OF GRAND JURY MATERIALS

Next, Smith requests an order permitting him to inspect "grand jury hearing transcripts, ballot, or record for inspection; indictment pertaining to the criminal charge; and criminal complaint." (Doc. No. 55 at 1). In this form motion, Smith speculates his due-process rights may have been violated and that he needs to inspect these materials to determine whether probable cause existed for his arrest and whether I lacked jurisdiction to hear his case. (*Id.* at 1-3). Smith claims he "is not engaging in a 'fishing expedition' . . . [because the government's alleged violation of defendants' due-process rights] has become a routine constitutional violation." (*Id.* at 3).

Smith's arguments fall short. A § 2255 application is not a substitute for a direct criminal appeal. *See, e.g., Reed v. Farley*, 512 U.S. 339, 353-54 (1994); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Smith did not file a direct appeal and therefore he must show there was "'a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process,'" and "either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed precluded,

4

or (2) that he is actually innocent of the subject offense." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Smith waived any purported due-process claims by pleading guilty and by failing to appeal. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). He does not offer any basis to support his conclusory claims that his rights were violated. Nor does he point to any evidence to show he would suffer actual prejudice without the grand jury transcripts or that he is actually innocent of the offenses to which he pled guilty.

Therefore, I deny his motion for disclosure of the grand jury transcripts and various other documents. (Doc. No. 55).

### C. SECTION 2255

Section 2255 permits a defendant to challenge the sentence he received through a claim that the defendant's sentence was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Defendants challenging their sentence under § 2255 must identify a constitutional error, "a fundamental defect which inherently results in a complete miscarriage of justice, . . . an omission inconsistent with the rudimentary demands of fair procedure[, or] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428 (1962) (citations and internal quotation marks omitted).

Smith offers no shortage of attacks on his conviction and sentence:

- He claims (a) the crack he sold "was not finger-printed or bought for [re-sale]," (b) the confidential informant who bought the drugs and guns cooperated with the police because she was afraid they would take her children away from her, (c) there was no video proof of hand-to-hand drug transactions, (d) his lawyer told

5

     him that, if he pled guilty, he would be sentenced to less than 20 years in prison, and (e) he was implicated in the controlled drug buys "at random." (Doc. No. 34-1 at 3, 5-6).

- He also alleges his conviction and sentence should be overturned due to ineffective assistance of counsel, "bias not informative," assessment fees, "the videos never showed any hand to hand deliveries for drugs or guns," "no merit procedurally barred and noncognizable," prosecutorial misconduct, entrapment, "no articulable criminal activity," malicious prosecution, lawyer never objected, and "no contrary facts." (Doc. No. 35 at 1).

- Finally, he claims his attorney was ineffective in failing (a) "to investigate and object to the lack of federal power to prosecute conduct the Framers left exclusively to the States"; (b) "to recognize and object to the lack of personal-territorial jurisdiction"; and, (c) "to recognize and to object to the court's lack of jurisdiction over criminal cases." (Doc. No. 43 at 1, 16, and 22).

The problem for Smith, however, is that he cannot meet the requirements of § 2255 simply by piling up endless accusations.

First, Smith waived his evidentiary claims by pleading guilty and by failing to appeal. *Tollett*, 411 U.S. at 267. He cannot bring those claims now because he does not identify good cause for his failure to appeal and offers no evidence he actually is innocent of the crimes to which he pled guilty. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Fair*, 157 F.3d at 430.

Further, Smith cannot obtain relief merely by offering conclusory statements of error or misconduct in his § 2255 motion and subsequent filings. *Elzy v. United States*, 205 F.3d 882, 885-86 (6th Cir. 2000). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

While Smith offers greater detail related to his ineffective assistance of counsel claims, those claims lack merit. An ineffective assistance of counsel claim requires proof the petitioner's attorney provided deficient representation and that the attorney's deficient performance caused the petitioner to suffer prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The proper measure of

6

attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. A petitioner also must show any error defense counsel allegedly committed was material. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

First, Smith claims he did not appeal because his second attorney told him that, if he did, I would rescind his initial sentence of 86 months and give him a longer sentence. (Doc. No. 34 at 3). Even if I were to assume Smith's wild allegation had any basis in fact, he cannot show he was prejudiced by the lack of an appeal. *Strickland*, 466 U.S. at 687. The sentence he received was 37% of the low end of his Guidelines range. Smith provides no reason to think he could have satisfied his heavy and demanding burden of showing his below-Guidelines-range sentence was substantively unreasonable on appeal. *United States v. Henry*, 569 F. App'x 372, 377-78 (6th Cir. 2014). Moreover, Smith offers no basis upon which he might have sought to undo his guilty plea on appeal, nor does he identify any evidence of actual innocence.

Next, Smith argues his attorney was ineffective in failing to raise certain arguments about whether federal courts have jurisdiction to hear cases involving the violation of federal criminal statutes. These arguments are unpersuasive. Smith cannot show his attorney was ineffective for failing to pursue a theory of constitutional interpretation that is diametrically opposed to two centuries of federal-court jurisprudence. *See, e.g., United States v. Comstock*, 560 U.S. 126, 135-36 (2010) ("[T]he Constitution, which nowhere speaks explicitly about the creation of federal crimes beyond those related to 'counterfeiting,' '[t]reason,' or 'Piracies and Felonies committed on the high Seas' or 'against the Law of Nations,' Art. I, § 8, cls. 6, 10; Art. III, § 3, nonetheless grants Congress broad authority to create such crimes."); *Champion v. Ames*, 188 U.S. 321, 347-48 (1903) (The Constitution vests in Congress the power to regulate and prohibit activities affecting commerce

7

between the States.); *United States v. Lucido*, 612 F.3d 871, 873–74 (6th Cir. 2010) ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.") (quoting 18 U.S.C. § 3231).

Smith offers no basis which could support the conclusion that counsel's failure to identify and advance the arguments Smith now presents, (Doc. No. 43), was objectively unreasonable. *See, e.g., Strickland*, 466 U.S. at 687.

Smith fails to show his sentence was imposed in violation of the Constitution or federal law. Therefore, I deny his § 2255 motion. (Doc. No. 34).

### D.  SECOND CHANCE ACT

Smith also seeks an order, pursuant to the Second Chance Act, requiring the Bureau of Prisons ("BOP") to grant him up to a year in an approved halfway house prior to the end of his term of incarceration, as well as the payment of $500 upon his release to aid his return to society. (Doc. No. 49). In his form motion, Smith argues the BOP fails to give individualized consideration to inmates' needs by applying a blanket policy of permitting inmates to serve the last six months of their sentence in a community correctional facility.

As an initial matter, Smith's arguments are based upon an outdated premise. The BOP abandoned the previously-mandatory six-month "categorical timeframe limitations on prerelease community confinement" over ten years ago. *Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009).

Further, the Second Chance Act does not permit a court to order the BOP to place an inmate in a community correctional facility. Instead, that Act requires that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1); *Lovett v. Hogsten*, No. 09-5605, 2009 WL 5851205, at *2 (6th Cir. Dec. 29, 2009) ("[T]he Second Chance Act does not guarantee a one-year RRC placement, but only directs the Bureau of Prisons to consider placing an inmate in a RRC for *up to* the final twelve months of his or her sentence.") (citing *Demis*, 558 F.3d at 514) (emphasis in original).

Smith's projected release date is in December 2022. He fails to provide a basis for his assertion that he is entitled to an order directing his placement in a community correctional facility over a year before he becomes statutorily-eligible for such a placement. Therefore, I deny Smith's motion. (Doc. No. 49).

### E.     FIRST STEP ACT

Smith also seeks a reduction in his sentence under the First Step Act. (Doc. No. 53).

Section 3582 permits a court to reduce a defendant's term of imprisonment if the defendant was sentenced to a term of imprisonment based upon a sentencing range which the Sentencing Commission subsequently lowers, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, [and] if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). An amendment to the Guidelines does not grant the defendant a right to a reduced sentence; rather, it grants the court discretion to consider reducing the defendant's previously-imposed sentence. *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010).

A court first must determine whether a defendant is eligible for a sentence reduction. *Dillon v. United States*, 560 U.S. 817, 827 (2010). After determining whether the defendant is eligible for a sentence reduction, the court also must consider the 18 U.S.C. § 3553(a) factors and "'the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment.'" *Curry*, 606 F.3d at 330 (quoting U.S.S.G. § 1B1.10 cmt. n. 1(B)).

Smith is not eligible for a sentence reduction. The First Step Act authorized the retroactive application of the provisions of the Fair Sentencing Act, which became law in 2010. *See, e.g., United States v. Boulding*, 960 F.3d 774, 778-79 (6th Cir. 2020). Smith was sentenced after the Fair Sentencing Act took effect, and the sentencing range applicable to his convictions has not been lowered since he was sentenced. Therefore, I deny his motion for a sentence reduction under the First Step Act. (Doc. No. 53).

## IV. CONCLUSION

For the reasons stated above, I deny Smith's § 2255 application, (Doc. No. 34), his motion to be placed in a community correctional facility pursuant to the Second Chance Act, (Doc. No. 49), his motions for the appointment of counsel, (Doc. No. 52 and 57), his motion to reduce his sentence under the First Step Act, (Doc. No. 53), his motion for the disclosure of grand jury transcripts, (Doc. No. 55), and his motion to supplement his § 2255 motion. (Doc. No. 56).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge